EMMA S. FALKLAND, as ADMINISTRATRIX, ETC., OF GEORGE F. FALKLAND, DECEASED, APPELLANT, v. THE ST. NICHOLAS NATIONAL BANK OF NEW YORK, RESPONDENT.

*Deposit made by an agent with a bank—right of the bank to set off against it a claim held against the beneficial owner thereof—the liability of a factor for money collected for his principal is discharged by his discharge in bankruptcy.*

For several years prior to July 13, 1866, the firm of Ruger Brothers had been carrying on business in New York, as ship brokers, chartering vessels and collecting the freight moneys on vessels consigned to them. About that time the firm, being embarrassed in business and desiring to protect the moneys so received from seizure by their general creditors, caused their bookkeeper, the plaintiff's intestate, to open an account, in his own name, with the defendant, in which all moneys received by the firm in the course of its business were deposited up to August 20, 1866; the bookkeeper managing the said account in accordance with the instructions and directions of the said firm. Prior to July 23, 1866, the defendant received, and discounted, in the regular course of business, a note made by Ruger Brothers, which became due on that day. Thereafter, and on August 16, the defendant charged the amount due on the said note to the account so kept by the intestate, and offered to pay over the balance of the account to him.

In this action, brought by him to recover the full amount of the deposit, *Held,*

that the bank was entitled to set off the amount due on the said note against the said account.

On April 30, 1869, the firm of Ruger Brothers obtained a discharge in bankruptcy. *Held*, that the firm was thereby relieved from all liability to the persons for whom the said moneys had been collected, and that it could not therefore be claimed, that the moneys so deposited with the defendant belonged to such persons, and not to the said firm.

APPEAL from a judgment in favor of the plaintiff entered upon the trial of this action by the court without a jury.

The original plaintiff died after the trial of this action, and the present plaintiff was substituted in his place.

The judge found that the firm of Ruger Brothers were for several years prior to July 13, 1866, shipping merchants or brokers, doing business in the city of New York, and that the plaintiff was their book-keeper; that, as such shipbrokers or agents, the business of the firm consisted in chartering vessels, collecting freight moneys on vessels consigned to them, and acting as agents for a line of steamships; that in the course of their said business they received various sums of money on account of captains of vessels, and on account of various freights of vessels consigned to them, and deposited such moneys in their bank account; that, about the time named, that firm became embarrassed in business, and in consequence thereof, and in order to keep the funds received and to be received by them in the course of their said business from being attached by their creditors, they, on said July 13, 1866, caused an account to be opened by the plaintiff in the defendant's bank, and thereupon, and until August 20, following, the moneys and checks received in the course of the business of Ruger Brothers were deposited in the said bank in the said account to the credit of the plaintiff; that, at this time, and until July 26, Ruger Brothers continued to deposit their own money in their own account with the Corn Exchange Bank; that in receiving, depositing, and paying out the said moneys, the plaintiff acted solely under the direction and instructions of the said Ruger Brothers, for whom he continued to be bookkeeper, and their said business continued to be transacted in all respects in the same manner as before such account was opened, except that the said moneys were so deposited in the name of the plaintiff; that prior to July 23, 1866, the defendant received, in the regular course of their

business, and discounted a note made by the said Ruger Brothers for the sum of $1,793, which said note matured and became payable on the said July 23; that thereafter, and on August 16, the defendant charged the said note to the account of plaintiff; that the note was not indorsed by plaintiff, that he had no connection therewith, nor was the note payable at the defendant's bank; that on August 16, 1866, there was on deposit with the defendant, to the plaintiff's credit, the sum of $2,000. That on August 15, 1866, the plaintiff drew all but the sum of $2,000 of such deposits from the defendant's bank, and, on the said August 16, presented to the defendant a check for $2,000, to draw out the remainder of the said deposits; that the defendant declined to honor the said check, but offered to pay to the plaintiff the difference between the said balance of $2,000, so to the credit of the account, and the amount of the said note for $1,793, which the plaintiff declined to receive.

The court held that the defendant had a right to set off the claim embraced in the said note, against the said deposits, and that the plaintiff was entitled to recover judgment in this action for the sum of $198.75, with interest from August 16, 1866.

*Cecil Campbell Higgins,* for the appellant.

*George W. Parsons,* for the respondent.

Daniels, J.:

This action was prosecuted for the recovery of a balance, consisting of the sum of $2,000, of moneys deposited by the intestate with the defendant. The deposit account was opened on July 13, 1866, and continued until the 15th of the following month, and it was in the usual form of debtor and creditor, containing no indication whatever that the funds deposited were received by the plaintiff, or to be held by him, or any other person, or by the defendant, as trust moneys. It appeared upon the trial, and was found as a fact by the judge, that the testator himself had no interest whatever in the moneys so deposited, or the amount credited for the deposits. They were the result of collections made by a firm known as Ruger Brothers, doing business as agents and brokers on account of

ships and vessels arriving in and departing from the city of New York. The moneys deposited in the account were collected by Ruger Brothers in the course of this business, on account of freights earned by the vessels for which they acted as agents, and they were then liable to pay them over, as they might be required to do so, to the masters, or the owners, of the vessels on account of which the collections were made. They became embarrassed in their business, and were apprehensive that they might be interfered with by efforts on the part of the other creditors to collect debts which they were unable to pay. For that reason, and to protect these moneys against their possible seizure by ordinary creditors, they were delivered to the intestate, who was the bookkeeper of the firm, to be deposited by him in his name, and so held as not to be liable to seizure in suits which might be brought by such creditors of the firm. This was the relation existing between the firm and the intestate as to these moneys; and while they were in his hands, he was accordingly obliged to appropriate and dispose of them as he might be directed by the firm, for the purpose of discharging the obligations created by the collections so far as, at the time, they remained unpaid. But no notice was given to the defendant that it was intended it should hold the moneys, or any portion of them, subject to the same obligation, or for the benefit of the persons on whose account the firm collected them. They were, on the contrary, deposited in the ordinary manner, by which, under the law, they became its moneys, and the defendant became a debtor liable for the payment only of an equivalent sum to the person making the deposit, or the firm on whose behalf he acted, whenever a proper demand, in the usual course of business, should be made for that purpose. The defendant sustained the relation to the intestate, and, through him, to the firm in whose employment he was engaged and acted, of a mere debtor; and the debt, in substance, was a debt to this firm of Ruger Brothers, for they were the parties in the transaction who were beneficially interested, and had the right, through the intervention of the intestate, to require the payment of the money to them. And if that had been made, and the moneys had been received by the firm, they would, as a matter of legal right, afterwards have been entitled to use it as they might

deem proper. For such moneys would have been only the proceeds of a simple debt due to themselves. It is true that if they used the money for purposes other than the extinguishment of debts incurred by the collection of those whose proceeds had been deposited, they would be still liable to the persons on whose account the collections were originally made. But that circumstance would not change the title to the indebtedness, or the funds which might be received from the defendant for the purpose of extinguishing it. The ultimate liability of its members to account for the moneys collected by them, would not change their title to the indebtedness existing in their favor against the bank. Notwithstanding the name in which the account was kept, it was still an indebtedness due to this firm ; and the money drawn out, on account of it, would be the money of the firm. In this respect, money differs from property of an ordinary description, for the title to it passes by delivery, and the course of trade is said to create a property in the holder. (*Saltus* v. *Everett*, 20 Wend., 268 ; *Commercial Bank of Albany* v. *Hughes*, 17 Id., 94, 100.)

The debt created by the deposits with the defendant, in fact belonging, as it did, to the firm, was subject to all the ordinary equities and claims of deposit accounts, of this nature. It appeared by the evidence that while the account was running, and before July 23, a note made by Ruger Brothers was presented to and discounted by the bank, and afterwards, and on or about August 16, it was charged to this account as the account of Ruger Brothers. The court in its decision found this to be a proper charge in favor of the bank, on account of the fact, that although the deposits were made in the name of the intestate, they were strictly for the benefit of Ruger Brothers, and created an indebtedness on the part of the bank to them. It seems to have been understood by the bank that the account, while in form in the name of the intestate, was that of the makers of this note, and for that reason it was deemed proper to charge it as a counter indebtedness which should be deducted from the amount otherwise due on the account. It is not contended but that this would have been an entirely proper charge had it not been for the circumstance that the firm collected the moneys which had been deposited in the course of their business

as factors, or agents, of other persons ; but it is claimed, that inasmuch as that we s the fact, that the title of these persons to the moneys was paramount to the right of the bank to charge the note against the indebtedness. If this account had been opened and continued with the bank as a trust account, or in any other manner, indicating that these moneys were deposited as the moneys of the persons whose claims were extinguished in their collection, the result claimed would follow from that circumstance ; but in the dealings had with the bank no notice was given to it that the moneys were not in truth the absolute and unqualified property of the firm on whose account the deposits in fact were made. For that reason the bank had the right to deal with the indebtedness in the form it did. It had the right to assume, from the account opened, and its evident knowledge of the facts, that the moneys deposited were, at the time when the deposits were made, the property of the firm in whose employment the intestate was engaged, and on whose behalf he acted in opening and continuing the account ; and that the indebtedness was, through the intestate, an indebtedness to the firm of Ruger Brothers ; and acting upon those facts to discount their paper presented to it, and in case of non-payment to charge up the amount due upon it to the account. This seems to follow from the lien secured to bankers upon the accounts of their customers, for the payment of any indebtedness which may be owing from the latter. (*Brandus* v. *Barnett*, 12 Clark & F., 787 ; *Currie* v. *Misa*, 10 L. R., Exch., 153 ; *Misa* v. *Currie*, L. R., 1 App. Cas., 554.) An equally effectual principle has also been embodied in the statutes of this State, providing, in a case of this description, that a debt owing by the real creditors may be set off in an action brought to recover a sum due to them in the name of a plaintiff having no real interest in the contract upon which the action is brought. (3 R. S., 5 ed., 635, § 12, subd. 10.)

It is claimed that this result will produce injustice to those persons whose moneys were collected by the firm of Ruger Brothers, and deposited in the name of the intestate with the defendant, but there is nothing in the case showing that any claims of this description remained in existence against Ruger Brothers. It did not appear by anything proven upon the trial that they were still indebted

to any persons for moneys, on whose account these collections had in fact been made. No claimants of that nature appeared to con-. test the right of the bank to have its own demand deducted from the accounts standing upon its books; and it was not shown that creditors of this nature in any form made any claim whatever for payment of any debts, out of this account. Without some proof of that nature it could not properly be presumed that demands of the character of those relied upon by way of answer to the claim made by the bank continued to have any existence, and surely, if they did not, there was no legal obstacle on account of the equities of the firm's creditors, standing in the way of the application made by the bank of the discounted note to the account on its books. The case, however, did not depend upon this mere absence of proof; for it was shown as a matter of fact that this firm of Ruger Brothers became bankrupt in the summer of 1866, and obtained a discharge in bankruptcy about April 30, 1869. This discharge under the bankrupt law relieved the firm from their liability to the persons whose debts had been collected in obtaining the money deposited, even if any of them did remain unpaid. For while it may have been received in a fiduciary character, there was no such defalcation on the part of the firm as would prevent the discharge granted from so far operating in its favor. (U. S. R. S., 991, 993, §§ 5111–5119.) The bankrupt law of ·1841 received substantially this construction in the case of *Chapman* v. *Forsyth* (2 How. U. S., 202), and the similarity of the provisions contained upon this subject in the present law would appear to require that the same construction should also be given to them.

But it is evident, from the facts appearing upon the trial, that this deposit account was in fact, as well as in law, the property of the firm of Ruger Brothers. If it had been collected by the intestate without deduction on account of this note, he would have been legally bound to have paid the full amount of it over to that firm, and they, under the circumstances, would not have been obligated to have distributed the particular money so collected among the persons from whose debts the moneys were obtained which went into the creation of the deposit account. It was proper under the circumstances, therefore, for the bank to charge up the debts due

to it, as it did; and all that the intestate in whose name the account stood, was entitled to claim, was the balance remaining after deducting the amount due upon the note. For this balance judgment was directed and entered in the case, and as that was all that could be rightfully claimed the judgment appealed from should be affirmed.

BRADY and BARRETT, JJ., concurred.

Judgment affirmed.